JON M. SANDS
Federal Public Defender
**JAMES D. SMITH**
Assistant Federal Public Defender
State Bar No. 024194
407 W. Congress St., Suite 501
Tucson, AZ 85701
Telephone: (520) 879-7500
*james_d_smith@fd.org*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SONIA QUINTERO,<br><br>Defendant. | No. CR 17-1895-TUC-JAS (BPV)<br><br>**OBJECTION TO CONFINEMENT PURSUANT TO 18 U.S.C. §4241** |

Ms. Sonia Quintero objects to being confined for restoration proceedings. A hearing to determine restoration is set before the Court on February 28, 2019. Ms. Quintero has been released and compliant with the pretrial release conditions set by the Court, and she has been present at all hearings ordered by the Court; as such, she submits that she is not a danger to the community or a flight risk.

There are options for outpatient restoration available, and she asks that the Court allow her to participate in an outpatient program should the Court find that she is restorable. However, the Court has indicated that it is disinclined to allow Ms. Quintero to participate in an outpatient restoration program; as such, she submits the following in support of her objection.

**I.  The language of 18 U.S.C. § 4241(d) does not mandate inpatient confinement for competency restoration.**

**A.  Relevant Statutory Language**

Under 18 U.S.C, § 4241(d), if the court finds by a preponderance of evidence that the defendant is incompetent to stand trial, "the court shall commit the defendant to the custody of the Attorney General," and "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility" for a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability in the foreseeable future that he will attain the mental capacity to proceed.

"Suitable facility" means "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." § 4247(a)(2). The Attorney General "may contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody," and "shall, before placing a person in a facility pursuant to the provisions of section 4241 . . . consider the suitability of the facility's rehabilitation programs in meeting the needs of the person." § 4247(i)(A) & (C).

The federal government broadly defines "hospitalization." For example, in the Medicare context, (42 U.S.C. § 1395, *et. seq.*), hospitalization includes both "inpatient hospital services" (§ 1395x(b)) and "partial hospitalization services." § 1395x(ff). Partial hospitalization services encompass services consistent with outpatient, community-based competency restoration, including "individual and group therapy with physicians or psychologists . . . services of social workers, trained psychiatric nurses, and other staff

2

trained to work with psychiatric patients . . . (and) patient training and education." "Hospital services" includes services "rendered to outpatients and partial hospitalization services incident to such services." § 1395x(s)(2)(B).

Moreover "custody" can include release in the community under supervision. For example, a person is in "custody" for the purpose of 28 U.S.C. § 2255 while on supervised release. *United States v. Reves*, 774 F.3d 562, 565 (9th Cir. 2014) (citing *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989)). *See also* 28 C.F.R. § 551.105; Bureau of Prisons (BOP) Program Statement P5100.08, Chapter 1, p. 2 (9/12/2006) (providing that custody levels include "community," "out," and "in." (BOP program statements are available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query.)

### B. Inpatient confinement for competency restoration, when it is not necessary or suitable based on individualized circumstances, violates laws protecting individuals with disabilities.

Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794(a), provides, in relevant part, that no individual with a disability shall, "solely by reason of her or his disability . . . be subjected to discrimination . . . under any program or activity conducted by any Executive agency." In this context, disability is defined as "a physical or mental impairment that substantially limits one or more major life activities"—including, *inter alia*, learning, reading, concentrating, thinking, communicating, and working—or being regarded as having such an impairment. 29 U.S.C. § 705(9)(B); 42 U.S.C. § 12102 (1) & (2). *See also* 42 U.S.C. § 15009(a)(2) (declaration of rights of individuals with developmental disabilities).

3

Currently, the department of Justice's (DOJ's) relevant implementing regulations mirror Section 504's general proscription against discrimination and require that DOJ "shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." 28 C.F.R. § 39.130(d).The Section 504 statute and integration regulation prohibit undue institutionalization of individuals with disabilities and require DOJ to ensure that the agency conducts its programs and activities, including competency restoration, in the most integrated setting appropriate for the individual defendant with a disability. Section 504's nondiscrimination mandate applies to "any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a)

To comply with Section 504's integration mandate, federal agencies are required to make reasonable modification of their policies, procedures or practices when necessary to avoid discrimination. *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (recognizing that "to assure meaningful access [under Section 504], reasonable accommodations in the grantee's program or benefit may have to be made").

In *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999), the Supreme Court ruled that, under Title II of the Americans with Disabilities Act (ADA), "[u]njustified isolation [] is properly regarded as discrimination based on disability." *See also id.* at 607 (States must provide community-based treatment for persons with mental disabilities when appropriate). The Supreme Court's reasoning in *Olmstead* applies equally to executive agencies under Section 504. *See Sanchez v. Johnson*, 416 F.3d 1051, 1063 (9th

Cir. 2005) (ADA and Section 504 integration mandates would be interpreted as "co-extensive").

Competency restoration services fall within DOJ's programs and activities, all of which are subject to DOJ's Section 504 implementing regulations. *See* 28 C.F.R. § 39.102 ("applies to all programs or activities conducted by the agency") (emphasis added); *see also Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998) (state prisons covered by ADA). Most, if not all, individuals found incompetent to stand trial ("IST") under the procedures of 18 U.S.C. § 4241 will satisfy Section 504's legal definition of an individual with a disability because they have a mental impairment that substantially limits at least one major life activity.

Mandatory detention to an inpatient institution for every individual found IST precludes an individualized assessment of their needs and placement in the most integrated setting in which their needs can be met, and therefore violates Section 504's integration mandate. The absence of a continuum of competency restoration services in less restrictive settings and the allocation of all resources to institutional placements results in unjustified segregation of people with mental disabilities. Detention at a medical institution of a prison complex is not in mainstream society; does not offer access to community activities and opportunities at times, frequencies and with persons of an individual's choosing; does not afford individuals choice in their daily life activities; and, does not provide individuals with disabilities the opportunity to interact with non-disabled persons, except for prison staff/medical providers. Confinement in a BOP institution severely diminishes the everyday life activities of individuals found IST,

including family relations, social contacts, work options, economic independence, and continuation of services. And individuals with disabilities are exploited and victimized in prison environments at higher rates than other inmates. *See* American Association on Intellectual and Developmental Disabilities, *Criminal Justice System* (2014), available at https://aaidd.org/news-policy/policy/position-statements/criminal-justice (last visited 2/15/19). Ms. Quintero would be particularly susceptible to abuse as her ability to negotiate a complex and foreign social setting has been medically removed.

Providing competency restoration in the community does not alter the nature of competency restoration. In fact, the government benefits from having a continuum of competency restoration treatment and services that includes outpatient and community-based options. In a 2016 study of about 13 outpatient competency restoration programs, rates of competency restoration averaged 70% and rates of unrestorability averaged 20.3%. W. Neil Gowensmith, et. al., *Lookin' for Beds in All the Wrong Places: Outpatient Competency Restoration As A Promising Approach to Modern Challenges*, 22 PSYCOL. PUB. POL'Y & L. 293, 299 (2016) ("Gowensmith"). The outpatient programs did not report any incidences or arrests for serious violence. *Id.* Outpatient competency restoration services are also less expensive than inpatient services. *Id.*

### C. The policies of the Attorney General (AG) and the Bureau of Prisons (BOP) are inconsistent with the statutory language and unconstitutional.

As explained above, the relevant statutory language allows for outpatient, community-based competency restoration treatment if suitable given the defendant's individualized circumstances. It is nevertheless the policy of Attorney General (AG) and

BOP to incarcerate every defendant found incompetent to stand trial under 8 U.S.C. § 4241(d) in a BOP Federal Medical Center regardless of whether inpatient confinement is necessary to achieve the government's interests or a suitable treatment protocol for the particular defendant.

The AG has delegated to BOP the duties imposed upon the Attorney General relating to the commitment and treatment of persons under § 4241(d). 28 C.F.R. § 0.96(j). A person committed under 18 U.S.C. § 4241(d) for mental evaluation and treatment is "considered to be a pretrial inmate." 28 C.F.R. § 551.101(a)(2). BOP "[s]taff ordinarily will supervise a pretrial inmate as if classified 'In' custody." 28 C.F.R. § 551.105(a). But, "[w]here circumstances warrant, staff may supervise a pretrial inmate according to procedures for other custody levels." § 551.105(b)(2). *See also* BOP Program Statement P5100.08, Chapter 1, p. 2 (9/12/2006) (providing that custody levels include "community," "out," and "in.").

"As used in 18 U.S.C. Chapter, 313" which includes § 4241(d), "'hospitalization in a suitable facility' includes the BOP's designation of inmates to medical referral centers or correctional institutions that provide the required care or treatment." 28 C.F.R. § 549.41. Under BOP policy, "those inmates requiring hospitalization by statute (§4241(d), §4243(e), §4245, §4246(e)) or clinical condition will be designated to a Medical Referral Center." BOP Program Statement P5070.12, pp. 6-7 (4/16/2008). Another policy statement provides that "[i]nvoluntary hospitalization of . . . inmates [found incompetent under § 4241(d)] requires a court determination that the person may be suffering from a mental disease or defect for the treatment of which he/she needs

7

custody in a suitable facility." BOP Program Statement P6010.03, p. 5 (7/13/2011). Thus, although even BOP seems to recognize that inpatient incarceration for competency restoration requires a court finding that such treatment is *necessary*, current AG and BOP policy mandate such incarceration without a showing of necessity.

The AG's failure to implement 18 U.S.C. § 4241(d) in accordance with the statutory language—which requires "suitable" treatment and a showing of necessity to justify inpatient confinement—contravenes its constitutional duty to "Take Care that the Laws be faithfully executed," U.S. Const., Art. II. § 3, which violates the separation of powers. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587-89 (1952) (separation of powers requires executive branch to implement policy in the manner prescribed by Congress). Assuming without conceding that any ambiguity exists in the statutory scheme, it must be resolved in favor of the defendant under the rule of lenity. *United States v. Turner*, 689 F.3d 1117, 1126 (9th Cir. 2012). The statute can and therefore must also be interpreted to avoid grave doubts about its constitutionality, *id.* at 1125, and to reconcile its provisions with the laws protecting individuals with disabilities. *United States v. Gallenardo*, 579 F.3d 1076 (9th Cir. 2009).

Current AG and BOP policy violates disability laws, which, as explained above, require competency restoration treatment in the setting least restrictive of individual liberty that can achieve the goals of treatment.

As explained below, current policy also violates substantive due process, equal protection, and the Eighth Amendment. At a minimum, automatic confinement for

competency restoration—without an individualized determination of the suitability or necessity of custodial inpatient treatment—raises serious constitutional concerns.

Moreover, procedural due process requires an adversarial hearing with an independent decisionmaker before a defendant released under the Bail Reform Act (BRA) can be committed to a custodial, inpatient institution for competency restoration. *Vitek v. Jones*, 445 U.S. 480, 494-95 (1980) (requiring these protections before convicted state inmate could be transferred to mental hospital based on prison doctor's determination that he could not be given proper treatment in the prison). These procedural protections are grounded both in the statute's "necessity" and "suitability" requirements (§ 4241(d), §§ 4247(a)(2), (i)(A) and (C)) and the in Due Process clause itself, which protects against unnecessary confinement in a mental hospital. *Vitek*, 445 U.S. at 489-494. *Vitek's* holding applies with even greater force here because pretrial defendants—released under the BRA—have a stronger liberty interest than convicted inmates.

In this competency-restoration context, the district court must make the pre-confinement determination regarding the suitability of the AG's proposed treatment plan. *Cf. Sell v. United States,* 539 U.S. 166, 180-81 (2003). It is the judiciary's—not an agency's—province to interpret criminal statutes, including application of the rule of lenity (*Abramski v. United States*, 573 U.S. 169, 191 (2014); *id.* at 203-04 (Scalia, J., dissenting)), and to interpret statutes to avoid constitutional concerns. *Solid Waste Agency v. Corps of Engineers*, 531 U.S. 159, 173-74 (2001).

9

## II. Automatic inpatient confinement for competency restoration violates due process.

Freedom from confinement before or without trial is a fundamental right. *United States v. Salerno*, 481 U.S. 739, 750 (1987); *Foucha v. Louisiana*, 504 U.S. 71, 80-83 (1992); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780-81 (9th Cir. 2014) (en banc). "[H]eightened scrutiny" must be applied when evaluating whether a statute or policy that "infringe[s] a 'fundamental' right" violates "substantive due process." *Lopez-Valenzuela*, 770 F.3d at 780. Because pretrial liberty is a fundamental right, substantive due process requires "case-by-case determinations of the need for pretrial detention;" the government must prove by "clear and convincing evidence" that "no condition of release c[ould] reasonably" address the government's interest in detention. *Id.* at 784-85. The BRA, 18 U.S.C. § 3142, et. seq., satisfies these requirements. *Salerno*, 481 U.S. 739. Title 18 U.S.C. § 4241(d) does not, however, specify that these conditions must be met before a defendant found incompetent to stand trial can be incarcerated for competency restoration treatment.

Due process requires that, before a defendant released under the BRA may be committed to an institution for inpatient custodial competency restoration, the government must prove by clear and convincing evidence that any less restrictive alternative is substantially unlikely to achieve the same result. *Cf. Sell*, 39 U.S. at 179-81 (the government can forcibly medicate defendant facing serious criminal charges in order to render that defendant competent to stand trial only if treatment is "medically appropriate," is "substantially likely to render the defendant competent to stand trial," and, "taking account of less intrusive alternatives, is necessary significantly to further

10

important governmental trial-related interests."). Without such a showing, confinement for competency restoration is excessive in relation to the government's interests; such confinement therefore also violates due process because it impermissibly imposes punishment without an adjudication of guilt. *Lopez-Valenzuela*, 770 F.3d at 789-91.

Defendant acknowledges *United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007), which held that pretrial confinement for competency restoration, without an individualized determination of whether such confinement is necessary to achieve the government's interest in competency restoration, does not violate substantive due process. But *Strong* was based on a faulty premise, i.e.., that inpatient confinement is always necessary to achieve the government's interest in competency restoration. Recent empirical evidence refutes that premise. Today, a substantial majority of states allow for or provide outpatient competency restoration in criminal proceedings, with positive results. *See* p. 6, *supra;* Gowensmith, at 296-97, 300-01; *United States v. Nino*, Ninth Circuit No. 17-10546, Amicus Brief, Arizona Disability Law Center, pp. 17-24 ((DktEntry 14) (ADLC Amicus Brief); Marisol Orihuela, *The Unconstitutionality of Mandatory Detention During Competency Restoration*, 22 BERKELEY J. CRIM. L. 1, 20-22 (2017) ("Orihuela").

In Arizona, for example, outpatient competency restoration is commonplace. The governing statute requires the court to select the "least restrictive treatment alternative" after considering individualized circumstances. Ariz. Rev. Stat. § 13-4512. (Arizona uses the federal standard to determine competency to stand trial.) As defense counsel and the district court recently agreed in another case in this district, defendants in Arizona state

11

courts routinely participate in outpatient restoration programs. *United States v. Nino*, 4:16-cr-01397-TUC-JAS, Document 63 (RT 12/04/17) at pp. 8-10.

The *Strong* Court simply did not have the benefit of now-available evidence that outpatient competency restoration programs are, in many circumstances, at least as effective as in-custody programs and are typically less expensive. *See* Gowensmith and ADLC Amicus Brief, *supra* at pp. 6, 11. As the Georgia Supreme Court recently observed in holding that mandatory confinement for competency restoration violates due process, confinement may actually impede the government's purpose of achieving competency restoration in some circumstances. *Carr v. State*, 815 S.E.2d 903, 915 (Ga. 2018). The stress of being detained, especially at a Bureau of Prisons (BOP) facility far from the defendant's legal counsel and support network, can exacerbate mental health issues or make it more difficult for intellectually disabled individuals to learn and gain the necessary understanding of the criminal justice system. Moreover, ongoing medical staffing shortages hinder BOP's ability to provide adequate treatment. Office of the Inspector General, U.S. Department of Justice, *Review of the Federal Bureau of Prisons' Medical Staffing Challenges* (March 2016), https://oig.justice.gov/reports/2016/e1602.pdf (last visited 10/26/18). Thus, in some cases, outpatient restoration programs are in a better position to accurately assess the defendant's likelihood of attaining competence.

Indeed, under current ABA standards, a defendant may be ordered to undergo treatment for competency restoration only if the court finds that there is a substantial probability that treatment will restore the defendant to competence in the foreseeable future. Criminal Justice Mental Health Standards, std. 7-4.10(a)(ii)(B) (Am. Bar Ass'n

12

2016). Those standards further provide that a "defendant should not be involuntarily hospitalized to restore or sustain competence unless the court determines by clear and convincing evidence that: (A) treatment appropriate for the defendant to attain or maintain competence is available in the facility; and (B) no appropriate treatment alternative is available that is less restrictive than placement in the facility." *Id.* at std. 7-4.10(a)(iii)(B). Under these ABA standards, "[a] defendant has a right to treatment in the least restrictive setting appropriate to restore competence to proceed." *Id.* at std. 7-4.11(c).

Even if the Court determines that no appropriate treatment alternative is available that is less restrictive than placement in an inpatient facility, confinement for competency restoration is not permissible unless the government has a compelling interest in prosecution. In making this determination in the *Sell* context, this Court considers whether the charged crime is sufficiently serious to indicate an important governmental interest. *United States v. Onuoha*, 820 F.3d 1049, 1054 (9th Cir. 2016). The Court uses the anticipated Guidelines range as the starting point in this analysis, but also considers the facts of the individual case. *Id.* at 1054-55.

Ms. Quintero is a very good candidate to receive probation in this case should she be found or plead guilty. She has little if any criminal history, and has been completely compliant with the conditions of her release. The co-defendant, who was here illegally and not eligible to receive probation, was sentenced to 8 months in custody. Being placed in confinement for restoration, which can take longer than 8 months, is fundamentally

unfair and violates due process given the possibility that she may be sentenced to probation.

As the Supreme Court of Georgia recently held, mandatory inpatient confinement for competency restoration violates due process even under mere "reasonable relation" scrutiny. *Carr v. State*, 815 S.E.2d 903, 914-16 (Ga. 2018). After considering the reasoning of *Strong* and other federal cases approving mandatory commitment under 18 U.S.C. § 4241(d), the court determined that mandatory commitment did not even bear a reasonable relation to the state's interest in restoring to competency an individual charged with a violent crime. *Id.* at 914-16. It emphasized that other states had concluded that detention is not always necessary to determine whether there is a substantial probability that the accused will attain competency in the foreseeable future. *Id.* at 914, n.16. Although the *Carr* court agreed with the Ninth and other federal circuits that determination of a defendant's likelihood to regain competency requires a "careful and accurate diagnosis," it observed that "neither the legislature nor these courts have explained why commitment is reasonable in every case to achieve this," because a defendant can be carefully evaluated by qualified professionals on an outpatient basis. *Id.* at 914. It concluded that a court must consider each defendant's individualized circumstances in determining whether custodial confinement is necessary and appropriate to further the state's interest in competency restoration. *Id.* at 906, 916-17.

### III. Automatic confinement for competency restoration violates equal protection.

Because freedom from confinement before or without trial is a fundamental right, any classification requiring pretrial confinement based on a mental impairment is subject

14

to strict scrutiny, i.e., it must be narrowly tailored to serve a compelling government interest. *Dunn v. Blumstein*, 405 U.S. 330, 338, 342 (1972) (classifications that burden fundamental rights must be "necessary to promote a compelling governmental interest"). Mandatory detention under 18 U.S.C. § 4241(d) violates equal protection because it subjects those found incompetent to stand trial to a less stringent detention standard than that required (1) in the BRA (18 U.S.C. § 3142(e)) for other pretrial defendants, (2) in 18 U.S.C. § 4246 for those already convicted who are scheduled for release (who may be committed only upon a showing of both mental disease or defect *and* dangerousness), and (3) for defendants in the Arizona state system who are found incompetent to stand trial. As explained above, inpatient confinement is often not necessary to achieve the government's interest in competency restoration; indeed, such confinement can be counterproductive.

The classification here does not meet even intermediate or rational basis scrutiny because there is not a constitutionally sufficient reason for incarcerating all defendants released under the BRA who are found incompetent to stand trial while allowing other defendants released under the BRA, or found incompetent to stand trial in the Arizona state system, to remain at liberty. *See Seeboth v. Allenby,* 789 F.3d 1099, 1105 (9th Cir. 2015) (to withstand equal protection challenge to a statute, government must have a constitutionally sufficient reason for treating groups differently). It is inconceivable that inpatient confinement is reasonably related, much less substantially related, to the government's competency-restoration interests in every case. *Carr*, 815 S.E.2d at 914.

15

## IV. Automatic confinement for competency restoration violates fundamental fairness and a hybrid of due process and equal protection guarantees.

The right of intellectually disabled or mentally ill individuals to pretrial liberty absent a showing of necessity is analogous to the convergence of equal protection and due process principles in the context of revoking a defendant's probation for the failure to pay a fine. *See Bearden v. Georgia*, 461 U.S. 660, 665-666, 672 (1983) (holding that, if probationer could not pay despite bona fide efforts, court must consider alternate measures of punishment and can impose prison time only if alternate measures are not adequate to meet State's interests). This analysis requires "careful inquiry into such factors as 'the nature of the individual interest affected, the extent to which it is affected, the rationality of the connection between legislative means and purpose, [and] the existence of alternative means for effectuating the purpose. . . .'" *Id.* at 666-67 (citation omitted). Under *Bearden's* reasoning, before a pretrial defendant can be incarcerated for custodial competency-restoration treatment, this Court must consider whether less restrictive, alternative means of treatment are adequate to meet the government's interest in bringing the defendant to trial.

Equal protection and due process analysis requires consideration of whether classifications and deprivations of liberty are justified under *today's* standards. *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1690 (2017); *Obergefell v. Hodges*, 135 S. Ct. 2584, 2603, 2602-08 (2015) (intersection of fundamental liberty and equal protection concerns justified striking down same-sex marriage prohibitions despite traditional deference to legislatures).

## V. Automatic confinement for competency restoration violates the Eighth Amendment.

In noncapital cases, the decision regarding bail and release must involve a weighing of individual factors, and detention without bail requires overcoming a constitutional presumption in favor of release. *Stack v. Boyle*, 342 U.S. 1, 5 (1951). "[T]he Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007) (citing *Salerno*, 481 U.S. at 754). Bail is excessive if it is "greater than necessary to achieve the purposes for which bail is imposed." *Id.* at 661. When inpatient hospitalization is not necessary to achieve competency restoration goals, the government simply does not need to detain a defendant in order to pursue its prosecution. In such circumstances, mandatory detention without bail violates the Eighth Amendment.

RESPECTFULLY SUBMITTED: February 21, 2019.

**JON M. SANDS**
Federal Public Defender

 *s/ James D. Smith*
**JAMES D. SMITH**
Assistant Federal Public Defender

*The above signed does hereby certify that on the above date he electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:*

Sarah Houston
Assistant United States Attorney