MICHAEL BAILEY
United States Attorney
District of Arizona
SARAH B. HOUSTON
Assistant U.S. Attorney
Arizona State Bar No. 026691
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: sarah.houston@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-1895-JAS-LAB |
| Plaintiff, | |
| vs. | RESPONSE TO DEFENDANT'S OBJECTION AND SUPPLEMENT TO MAGISTRATE JUDGE'S ORDER OF CONFINEMENT FOR COMPETENCY RESTORATION TREATMENT |
| Sonia Quintero, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, hereby responds to the defendant's Objection to Magistrate Judge's Order of Confinement for Competency Restoration Treatment (ECF Doc. 89) and Supplement (ECF Doc. 92) and requests this Court deny those objections and commit the defendant to the custody of Attorney General for the purposes of restoration as required by 18 U.S.C. § 4241(d).

**FACTS AND PROCEDURAL HISTORY:**

On November 11, 2017, the defendant, Sonia Quintero, was found driving a vehicle that contained an illegal alien (a marijuana backpacker) and approximately 103.84 kilograms of marijuana. The defendant was *Mirandized* and waived her rights. She stated that she was hired to pick up an unknown person. She was expected to deliver the person and marijuana to Mesa, Arizona.

On December 6, 2017, the grand jury indicted the defendant for Conspiracy to Possess Marijuana with Intent to Distribute and Possession of Marijuana with Intent to Distribute in violation of 21 U.S.C. §§ 846 and 841. (ECF Doc. 18.)

Without filing a motion for a competency evaluation, the Federal Public Defender's Office hired Dr. Menchola to conduct a neuropsychological evaluation of the defendant to determine competency to stand trial. The evaluation was conducted in August of 2018. Dr. Menchola determined that the defendant was not currently competent to stand trial. Dr. Menchola was also paid to issue an opinion about whether the defendant should be restored in or out of custody.

In October 2018, the defendant filed a motion for a competency evaluation, which the court granted. (ECF Doc. 69.) The defense selected Dr. Parker for the evaluation. Dr. Parker conducted the evaluation and determined that the defendant was not currently competent to stand trial.

On February 21, 2019, a week before the evidentiary hearing concerning competency, the defendant filed a Notice of Objection to Confinement Pursuant to 18 USC § 4241 (ECF Doc. 74.) The notice argued that in-custody restoration would violate a number of statutes and constitutional provisions.

On February 28, 2019, an evidentiary hearing was held. Both Dr. Parker and Dr. Menchola testified. After testimony and argument, Magistrate Judge Velasco held that the defendant is not competent to proceed but is restorable. (ECF Doc. 75.) Magistrate Judge Velasco gave the defense a week to file an additional pleading about the Federal Public Defender's Office paying for out-of-custody restoration treatment. He also reassigned the case to Magistrate Judge Bowman. (ECF Doc. 75.)

A status hearing was set for March 19, 2019, before Magistrate Judge Bowman "to determine the restoration process for the defendant." (ECF Doc. 75.)

On March 5, 2019, the defendant filed another notice entitled: Addendum to Defendant's Objection. (ECF Doc. 77.) In the notice, the defendant stated that the Federal Public Defender would arrange and pay for out-of-custody restoration and asked the court

to make an order to that effect. The Government filed its response objecting to out-of-custody restoration because it is contrary to the plain language of 18 USC § 4241. (ECF Doc. 78.)

On March 19, 2019, Magistrate Judge Bowman heard oral argument on the objection and response before taking the matter under advisement. (ECF Doc. 80.) A month later, Magistrate Judge Bowman issued an order denying the defendant's objection and ordering the defendant to be committed to the custody of the Attorney General for restoration treatment pursuant to the requirements of 18 USC § 4241(d). (ECF Doc. 87, pp. 8-10.) The Order did not set a date and time for the defendant to appear so she could be taken into custody, but ordered that a status conference be set before the district court. (ECF Doc. 87, p. 10.) Finally, the order required defense counsel to file any objections no later than April 24, 2019. (ECF Doc. 87, p. 8.) This Court then set a status conference for May 15, 2019. (ECF Doc. 90.)

In response to the Magistrate Judge's order, on April 24th, defense counsel filed a perfunctory objection incorporating her previous arguments. (ECF Doc. 89.) Defense counsel then filed a substantive objection on May 3, 2019. (ECF Doc. 92.)

**LAW:**

Title 18 U.S.C. § 4241(d) mandates that a defendant who has been found incompetent to stand trial in federal court must be committed to the custody of the Attorney General for treatment in a suitable hospital facility in order to provide treatment to restore competency. 18 U.S.C. § 4241(d). The statute limits the amount of time a defendant can remain hospitalized to "a reasonable period of time, not to exceed four months," to determine if a defendant will become competent in the foreseeable future. *Id*. If at any time before the four-month term has expired the director of the facility believes defendant's competency has been restored, the director shall file a "certificate to that effect" with the district court, the district court will hold a hearing, and if defendant is found competent, order defendant's release and set a date for trial. 18 U.S.C. § 4241(e).

The Ninth Circuit has held that § 4241(d) does not violate due process, joining The First, Seventh, and Eleventh Circuits. *United States v. Strong*, 489 F.3d 1055, 1063 (9th Cir. 2007). The Ninth Circuit further stated that "the overarching purpose of commitment under § 4241(d) is to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency. Such a determination requires a more 'careful and accurate diagnosis' than the 'brief interviews' and 'review of medical records' that tend to characterize he initial competency proceeding." *Id.* at 1062, citing *United States v. Ferro*, 321 F.3d 756, 762 (8th Cir. 2003); *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000). This holding was recently affirmed in an unpublished decision, in which the Court declined to overturn *Strong* and again held that § 4241(d) does not violate substantive due process. *United States v. Nino*, 750 Fed. Appx 589, 589 (9th Cir. 2019) (unpublished). The Court further held that § 4241(d) does not violate the Eighth Amendment. *Id.* at 590. Finally, the Court concluded that the plain language of § 4241(d) requires that an incompetent defendant be committed to the custody of the Attorney general. *Id.*

The defendant objects to the Magistrate Judge's Order committing her to the custody of the Attorney General for restoration under 18 U.S.C. § 4241(d) on a number of grounds. (ECF Doc. 92.) Her arguments contradict the plain language of the statue and longstanding case law.

## I.   THE PLAIN LANGUAGE OF 18 U.S.C. § 4241(D) IS UNAMBIGUOUS AND MANDATES INPATIENT HOSPITALIZATION.

The plain language of § 4241 mandates inpatient hospitalization for purposes of competency restoration. All circuits that have evaluated this statute have found that § 4241 is unambiguous on its face, and that the inpatient commitment of a defendant for purposes of competency restoration is mandatory. *See United States v. Ferro*, 321 F.3d 756, 761 (8th Cir. 2003) (noting that although "[i]t is clear that the statutory scheme detailed by Congress in § 4241(d) provides the district court with the discretion to initially determine whether

defendant is competent to stand trial ... after determining that a defendant is incompetent ... a district court is required to commit defendant to the custody of the Attorney General for a reasonable period of time to evaluate whether treatment would allow the trial to proceed"); *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000) (stating that statute establishes non-discretionary general rule of commitment without a "case-by-case choice by the district court as to whether to incarcerate once the incompetency finding has been made"); *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990) (holding that commitment under § 4241(d) is "mandatory" once court determines defendant to be incompetent); *United States v. Shawar*, 865 F.2d 856, 860 (7th Cir. 1989) (holding that "plain meaning" of phrase "shall commit" is "that once a defendant is found incompetent to stand trial, a district court has no discretion in whether or not to commit him"); *United States v. Magassouba*, 544 F.3d 387, 404–05 (2nd Cir. 2008). The plain language of § 4241(d) mandates inpatient hospitalization for purposes of competency restoration.

Moreover, "[w]hen the statute's language is plain, the sole function of the courts -- at least where the disposition required by the text is not absurd -- is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citation and internal quotation marks omitted). "The plain meaning of a statute is always controlling unless that meaning would lead to absurd results." *S.E.C. v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003) (internal quotation marks omitted). When the language of a statute is unambiguous, the judicial inquiry ends. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Here, the plain text of the statute is clear. Section 4241(d) states:

> (d) [Upon a finding of incompetence] the court shall commit defendant to the custody of the Attorney General. The Attorney General shall hospitalize defendant for treatment in a suitable facility—
>
> (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) for an additional reasonable period of time until [he is either

competent or the charges against him are disposed of.]

18 U.S.C. § 4241(d). A suitable facility, as defined by the statute, is one that can provide care and treatment commensurate with a defendant's characteristics. 18 U.S.C. § 4247(a)(2).

The statute requires the court to "commit defendant to the custody of the Attorney General," who is then mandated to "hospitalize defendant for treatment in a suitable facility---." 18 U.S.C. § 4241(d). To commit means, "to place officially in confinement or custody." American Heritage College Dictionary (5th Ed. 2018). The common meaning of the word "hospitalize" is "to place in a hospital for treatment, care, or observation." *Id*. In the context in which the word is used, it is clear that Congress meant inpatient hospitalization and not out-patient treatment. This meaning is supported by the requirements that a defendant be hospitalized *in* a suitable facility, as opposed to a defendant being referred for appropriate treatment.

Further, the statute mandates that if a defendant is restored to competency, a defendant is to be discharged from the facility, and then will be subject to the Bail Reform Act. 18 U.S.C. § 4241(e). If the word "hospitalize" included out-patient treatment, then § 4241(e) would be absurd and have no meaning. That the government is able to contract with non-government contractors to provide this required service does not change the meaning of the statute. "We give the words of a statute their ordinary, contemporary, common meaning; absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (internal quotations omitted). And, we "must assume that 'the ordinary meaning of the language accurately expresses the legislative purpose [of Congress].'" *Joffe v. Google, Inc*., 746 F.3d 920, 926 n.4 (9th Cir. 2013).

Because the defendant has been found not competent, she should be ordered into the custody of the Attorney General for treatment as required by the plain language of the statute.

/ / /

## II.  THE STATUTORY MANDATE OF INPATIENT RESTORATION UNDER 18 U.S.C. § 4241(d) IS LAWFUL.

The defendant makes multiple arguments asserting that the statutory mandate of inpatient restoration is unconstitutional and unlawful. These arguments ignore case law and misstates the applicable law.

### A. Section 4241(d) does not violate § 504 of the Rehabilitation Act or similar provisions.

As an initial matter, the defendant acknowledges that there has been no determination of disability made by any district court or magistrate judge in this case. (ECF Doc. 92, p. 5.) Further, such a determination is not an appropriate part of a competency determination within the framework of 18 USC § 4241 and the defendant has provided inadequate information on the subject.

Section 504 of the Rehabilitation Act prohibits discrimination against qualified individuals with disabilities by any program or activity receiving federal financial assistance or by any program or activity conducted by a federal executive agency or the U.S. Postal Service, and it protects qualified individuals with disabilities who apply to and participate in such programs. Section 504 directs that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794. The Rehabilitation Act integration regulation "requires recipients of federal funds to 'administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons.'" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 591-92 (1999) (quoting 28 C.F.R. § 41.51(d)).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132.[1]

The Rehabilitation Act, as well as the ADA, are civil statutes. Violations of the Rehabilitation Act and the regulations setting forth the "method of administration" of both statutes are enforceable through private actions. *See Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002). The government has not been able to find any circumstances wherein a defendant has an enforceable right of action of a civil law in a criminal case where defendant has been found to be incompetent. Litigation of other civil statutes giving a private right of action are not appropriately litigated in criminal proceedings. *See United States v. Heredia-Oliva*, 2008 WL 205574 *2 (D. AZ 2008) ("[C]riminal proceedings are not the proper forum in which to challenge Defendant's ability to access legal materials for a separate asylum claim…." which should properly brought in a civil action under 42 U.S.C. § 1983).

Further, well-established rules of statutory construction reflect that the Rehabilitation Act does not conflict with or abrogate § 4241(d). "Where an appellate court can construe two statutes so that they conflict, or so that they can be reconciled and both can be applied, it is obliged to reconcile them." *Momeni v. Chertoff,* 521 F.3d 1094, 1097 (9th Cir. 2008). "We assume that Congress is aware of existing law when it passes legislation." *United States v. First,* 731 F.3d 998, 1007 (9th Cir. 2013). The Rehabilitation Act provisions were enacted in 1973. In 1984, Congress enacted the Insanity Defense Reform Act of 1984 (IDRA), which included § 4241(d). Thus, the Rehabilitation Act had been in force for over 10 years when the IDRA was passed. Congress was aware of the Rehabilitation Act at the time it passed § 4241(d), but clearly chose not to extend its protections to it. "Where a subsequently enacted statute conflicts with a prior act, the latter

---

[1] Title II and the Rehabilitation Act are "similar in substance" and interpreted consistently. *Martin v. California Dept. of Veteran's Affairs*, 560 F.3d 1042, 1047 N. 7 (9th Cir. 2009).

overrides the former to the extent necessary to allow for the operation of the latter." *In re Tapp*, 16 B.R. 315, 321 (Bankr. D. Alaska 1981).

In addition, § 4241 is a specific statute dealing solely with the procedures applicable to defendants who have been found to be incompetent to stand trial. Section 504 of the Rehabilitation Act is a general statute applicable to persons with disabilities. "It is an elementary tenet of statutory construction that '[w]here there is no clear indication otherwise, a specific statute will not be controlled or nullified by a general one.'" *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 375 (1990) (citation omitted). It is a "well-settled rule, that general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of enactment, may subsist together, the specific qualifying and supplying exceptions to the general." *United States v. Navarro*, 160 F.3d 1254, 1256–57 (9th Cir. 1998) (quoting *Townsend v. Little*, 109 U.S. 504, 512 (1883)). This proposition was reiterated in *United States v. Nino*, 750 Fed.Appx 589 (9th Cir. 2019) (unpublished), under the specific circumstances now being raised by the defendant. The court explained that "the general anti-discrimination provisions cited by Nino, 29 U.S.C. § 794 and 42 U.S.C. § 15009(a)(2), do not override the prevailing interpretation of § 4241(d), a specific criminal provision." *Nino*, 750 Fed. Appx. at 590.

Even if the Rehabilitation Act applies, the record does not provide a clear picture of the defendant's disability or that she was discriminated against solely because of her disability. In order to sustain a right of action under the Rehabilitation Act, defendant must first show she is an "individual with a disability." *Townsend v. Quasim*, 328 F.3d 511, 516 (9th Cir. 2003). This is the defendant's burden. *Bates v. United Parcel Serv.*, 511 F.3d 974, 988 (9th Cir. 2007). Indeed addressing this has not been the purpose of the competency proceedings, much less the focus.

Finally, the defendant is not being discriminated against based on any alleged disability. To support a finding that § 4241(d) violates § 504 of the Rehabilitation Act, defendant must also show that she is being discriminated against based *solely* on her

disability. 29 U.S.C. § 794(a) (emphasis added). The defendant, however, has not established sufficient facts to meet this high standard. The requirements of § 4241(d) come into play because defendant has been found presently incompetent to stand trial, not due to any alleged disability. *United States v. Garza*, 751 F.3d 1130, 1136 (9th Cir. 2014) (the presence of a mental problem is irrelevant if there is no indication the defendant is unable to understand the proceedings and assist in his defense). As the defendant's alleged disability is not the basis for the mandated hospitalization, she cannot show she is being discriminated against solely due to her disability.

**B.  Title 18 U.S.C. § 4241(d) does not violate the Equal Protection Clause.**

The defendant argues that mandatory detention pursuant to 18 U.S.C. § 4241(d) violates the Equal Protection Clause because it uses different procedures and standards than those used in 18 U.S.C. § 4246, 18 U.S.C. § 3142(e), and Arizona's state competency system. This argument fails because the defendant applies an incorrect standard of scrutiny and the different procedures and standards she cites to do not violate equal protection.

The Equal Protection Clause "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). In order to show an equal protection violation, a defendant must show that "different legal standards are arbitrarily applied to similarly situated defendants." *Del Vecchio v. Illinois Dept. of Corrections*, 31 F.3d 1363, 1386 (7th Cir. 1994). The equal protection clause does not deprive the government of all power of classification. *United States v. Sahhar*, 917 F.2d 1197, 1202 (9th Cir. 1990). It merely requires that the government treat alike persons who are similarly situated in the absence of sufficient justification for the difference in treatment. *Id.*

The defendant claims that strict scrutiny is the standard that applies to the deprivation of liberty under 18 U.S.C. § 4241(d). However, in *Sahhar*, the Ninth Circuit said that "it is clear that strict scrutiny *does not* apply to involuntary commitment classifications." *Id.* at n. 4 (emphasis added). Furthermore, no Supreme Court case has

applied a higher level of scrutiny than rational basis review in the context of civil commitment. *United States v. Timms*, 664 F.3d 436, 445-46 (4th Cir. 2012).

Under a rational basis review, a classification enjoys a strong presumption of validity and is constitutional as long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993). A "classification 'must be upheld against equal protection challenges if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has a foundation in the record." *Id.* at 320–21.

1. **Defendants subject to the provisions in § 4241(d) and § 4246 are not similarly situated, and there is a rational basis for the differences in the commitment standards.**

First, the persons subject to those two statutes are not similarly situated. The equal protection clause only guarantees like treatment to persons similarly situated. *Rostker v. Goldberg*, 453 U.S. 57, 79 (1981). An individual pending commitment pursuant to § 4241(d) still has charges pending, will only be committed for period of time that is strictly limited in duration, and is facing potential punishment if competency is subsequently restored and if she is convicted. A person who has been convicted and is pending civil commitment at the completion of her sentence is no longer facing punitive action if convicted, but is instead facing continued, potentially indefinite, commitment if she is a danger to others or property. Thus, the persons in these two classifications are not similarly situated.

Second, the statutes serve two different purposes. The competency of a defendant to stand trial concerns her ability to understand the proceedings and to assist her counsel in the defense of her case. Section 4241(d)'s purpose is to allow for an evaluation to determine if someone is truly incompetent and if so, whether they can be restored to competency in the foreseeable future. Section 4241(d) only allows for a limited period of commitment, that must be reasonable, but no more than four months, in order to determine if a defendant

can be restored to competency and proceed with trial on criminal charges. 18 U.S.C. § 4241(d). However, a defendant facing involuntary commitment at the completion of her sentence is also a danger to society. 18 U.S.C. § 4246(a). The purpose of the statute is the protection of others as the concerns are whether defendant poses a serious risk of causing substantial bodily harm to others or serious damage to property. The commitment is potentially lifelong depending on the extent of the mental illness and whether defendant's treatment progresses to the point she is no longer a danger to the community. Given the differing consequences, as well as the government's legitimate interests, any disparate treatment is justified.

    **2. <u>Defendants subject to the provisions in § 4241(d) and § 3142(d) are not similarly situated, and there is a rational basis for the differences in the commitment standards.</u>**

The defendant next asserts that § 4241(d) violates equal protection because persons can be detained under a less stringent standard than those who are subjected to pre-trial detention. Again, the two groups are not similarly situated. The provisions of the Bail Reform Act allow the limited pretrial detention of those criminal defendants who are either a danger to the community or a risk of flight. Placement is in a jail facility, similar to imprisonment. It is subject to the time limitations set forth in the Speedy Trial Act. The government's interest is to ensure defendant's presence for trial or to ensure the safety of the community while trial is pending. The purpose of § 4241(d) is to allow for the evaluation and treatment of a criminal defendant who is, in essence, no longer pending trial because he has been found incompetent to stand trial. The confinement is in a hospital and its duration is strictly limited.

Even if this Court were to find that pre-trial detainees and pre-trial detainees who have been found incompetent to stand trial are similarly situated, the purpose for each statute justifies the differences. As set forth in *Strong*, the overarching purpose of commitment under § 4241(d) is to enable medical professionals to accurately determine whether a criminal defendant is restorable to mental competency. The temporary

hospitalization allows for a "more careful and accurate diagnosis before the court is faced with the serious decision whether to defer a trial indefinitely and (quite often) to release a defendant back into society." *Strong*, 489 F.3d at 1062. The provisions of § 4241(d) are not applied unless, and until, a court finds that defendant is suffering from a mental disease or defect that renders him mentally incompetent to stand trial.

In contrast, the overarching purpose of detention for a pre-trial detainee who has not been found to be incompetent is to ensure either a defendant's appearance for trial or to protect the public from a pre-trial defendant who is found to be a danger to the community. *Salerno*, 481 U.S. at 752-53. The purposes of each statute justify the differences.

**3.  Equal protection is not violated where state and federal laws differ.**

It is well-established that there is no equal protection violation where the federal government treats a federal defendant in the same manner as all other defendants within the federal system. The fact that the state of Arizona may have different procedures for the restoration of defendants to competency is of no avail. *United States v. Antelope*, 430 U.S. 641, 648-649 (1977). Congress has the constitutional power to institute procedures regarding defendants who are incompetent to stand trial. *Higgins v. United States*, 205 F.2d 650, 652-53 (9th Cir. 1953). As such, "it is of no consequence that the federal scheme differs from a state criminal code otherwise applicable within the boundaries of the State of [Arizona]." *Antelope*, 430 U.S. at 648-49. "Under our federal system, the National Government does not violate equal protection when its own body of law is evenhanded, regardless of the laws of States with respect to the same subject matter." *Antelope*, 430 U.S. at 648-49.

**C. Mandatory confinement under 18 U.S.C. § 4241(d) does not violate "hybrid" due process and equal protection guarantees.**

The defendant argues that she has hybrid guarantees created by a combination of the due process and equal protection clauses. She cites *Bearden v. Georgia*, 461 U.S. 660 (1983) as supporting this proposition. However, the Supreme Court in *Bearden* did not create a new set of rights or guarantees separate from equal protection or due process

analyses. It simply recognized that the legal question presented in the case, which related to the treatment of indigent defendants in the criminal system, was an area that courts had sometimes analyzed under an equal protection framework and sometimes analyzed under a due process framework. *Id.* at 665-66. It did not create additional rights. As discussed above, 18 U.S.C. § 4241(d) does not violate equal protection or due process.

## II.   THE DEFENDANT IS ADVOCATING FOR AN OPTION THAT DOES NOT EXIST

The defendant continues to insist that she be committed to an out-of-custody restoration program. To be clear, no such option exists in the District of Arizona, much less the federal system as administered by the Attorney General. Defense counsel asserts that he has located a private contractor who is willing to provide competency restoration services on an outpatient basis. This contractor is not approved by the Attorney General and exists entirely outside the statutory framework in 18 USC § 4241.

Further, the defendant is abusing substances while on release, (ECF Doc. 88) which will undoubtedly impact her ability to focus, learn, and retain information. The defendant is also repeatedly late to court appearances and appointments with providers. She was an hour late to her appointment with Dr. Menchola, took a multitude of breaks, and required the appointment to end at a certain time. On-going substance abuse, tardiness, and absences are taken out of the equation when a defendant is restored as required by § 4241. Because she will be hospitalized, the defendant's access to drugs and intoxicants is removed. She can be prescribed medication, if that is deemed helpful. She can be monitored twenty-four hours a day. It will also ensure her prompt appearance for the duration of interviews and restoration programs. No outpatient restoration program can accomplish these same things. This is what is required by law.

As discussed above, 18 USC § 4142(d) requires that a defendant whom a court determines is not competent to stand trial must be committed to the custody of the Attorney General for a reasonable time for treatment. Any court order requiring out-of-custody treatment would violate the applicable statute and would be unlawful.

1

2 **CONCLUSION:**

3        The Government further incorporates its previous arguments made in ECF Doc. 78.

4 The Government also agrees with the legal conclusions reached in the Magistrate Judge's

5 Order in ECF Doc. 87.

6        For the reasons set forth above, the government respectfully requests that the Court

7 deny the defendant's objections and order the defendant to the custody of the Attorney

8 General for treatment as required by 18 USC § 4241(d).

9

10                       Respectfully submitted this 14th day of May, 2019.

11

12                            MICHAEL BAILEY
                           United States Attorney

13                            District of Arizona

14                            *s/Sarah B. Houston*

15                            SARAH B. HOUSTON
                           Assistant U.S. Attorney

16

17 Copy of the foregoing served electronically or by
other means this 14th day of May, 2019, to:

18 James Smith - Attorney for Defendant

19

20

21

22

23

24

25

26

27

28