**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Sonia Quintero,<br><br>Defendant. | No. CR-17-01895-001-TUC-JAS (LAB)<br><br>**ORDER** |

Pending before the Court is Defendant's Objection to Magistrate Judge's Order of Commitment for Competency Restoration Treatment (Doc. 89).[1] On May 15, 2019, the Court heard oral arguments from both parties and took the matter under advisement. (Doc. 102.) The Court also gave the parties additional time to file supplemental pleadings. (Doc. 102.) Defendant filed a supplement (Doc. 103). Based on the following reasoning, Defendant's objection is overruled.

**I.     LEGAL STANDARD**

This Court will only modify or set aside an order relating to a nondispositive matter referred to a magistrate judge if it is "contrary to the law or clearly erroneous." Fed. R. Crim. P. 59(a);[2] *see* 28 U.S.C. § 636(b)(1)(A). "Contrary to the law" signifies that this Court will conduct a *de novo* review of the magistrate judge's legal reasoning. *Morgal v.*

---
[1] For ease and simplicity, the Court shall cite to the documents and docket within this case as "Doc."
[2] According to the Advisory Committee Notes for the 2005 Adoption, this rule is partially derived from Federal Rule of Civil Procedure 72, which contains the same standard of review for nondispositive matters before a magistrate judge and is therefore instructive on how to apply this rule.

*Maricopa Cty. Bd. of Supervisors*, 284 F.R.D. 452, 458-59 (D. Ariz. 2012); *Jensen v. Solvay Chemicals, Inc.*, 520 F. Supp. 2d 1349, 1351-52 (D. Wyo. 2007). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

## II. BACKGROUND

Sonia Quintero, Defendant, is charged with conspiracy to possess with the intent to distribute marijuana and possession with intent to distribute marijuana. (Doc. 18.) On November 27, 2017, Defendant was released on her own recognizance. (Doc. 16.) On October 16, 2018,[3] Defendant filed a motion for a competency examination. (Doc. 68.) On February 21, 2019, Defendant filed a Notice of Objection to Confinement Pursuant to 18 U.S.C. § 4241. (Doc. 74.) On February 28, 2019, Magistrate Judge Bernardo P. Velasco held an evidentiary hearing and found that Defendant was not competent. (Doc. 75.) Magistrate Judge Velasco provided the parties with additional time to file briefing regarding funding for outpatient restoration in Arizona and reassigned this case to Magistrate Judge Leslie A. Bowman. (Doc. 75.) Defendant filed an addendum to her previous objection (Doc. 77), which explained that there was an out-of-custody restoration program willing to provide treatment to Defendant and that the Federal Public Defender would pay for the treatment, in addition to handling the logistics. The Government filed a response to both Defendant's objection and the addendum. (Doc. 78.) On March 19, 2019, Magistrate Judge Bowman held a hearing regarding out of custody restoration and took the matter under advisement. (Doc. 80.)

On April 19, 2019, Magistrate Judge Bowman filed an order addressing Defendant's arguments. (Doc. 87.) Magistrate Judge Bowman ordered in custody restoration. (Doc. 87.) On April 24, 2019, Defendant filed Objection to Magistrate Judge's Order of Confinement for Competency Restoration Treatment (Doc. 89.)

---

[3] This is the date the motion was filed. Defendant lodged the motion on October 5, 2018, with a motion to file under seal. (Docs. 66, 67.)

- 2 -

## III. ANALYSIS

Defendant raises the following legal arguments in furtherance of out-of-custody restoration: (1) 18 U.S.C. § 4241(d) does not require inpatient confinement for competency restoration based on the statutory language, (2) mandatory in custody restoration violates Section 504 of the Rehabilitation Act, (3) the current policies of the Attorney General and the Bureau of Prisons are not consistent with § 4241(d) and the Rehabilitation Act and therefore violate the United States Constitution, (4) the Bureau of Prisons medical centers are not suitable to meet Defendant's needs, (5) the Government has not shown that the available out-of-custody restoration programs are inadequate, (6) mandatory custodial restoration violates procedural due process, (7) mandatory custodial restoration violates substantive due process, (8) mandatory custodial restoration violates equal protection, (9) mandatory custodial restoration violates a hybrid of due process and equal protection, and (10) mandatory custodial restoration violates the Eighth Amendment prohibition against excessive bail. (Docs. 74, 97, 101, 103.) The Court will address each argument in turn.

### A. *18 U.S.C. § 4241(d) Is Unambiguous and Does Not Provide the Court with Discretion.*

Defendant argues that the statute can be read to require individualized determinations of the least restrictive means of accomplishing restoration. Defendant attempts to broaden the definition of custody and hospitalization within § 4241 by referencing 42 U.S.C. § 1395, *et. seq.* (the definition of hospitalization within the Medicare context may include outpatient programs) and 28 U.S.C. § 2255 (defining custody for federal habeas to include supervised release into the community). She also points to the Bail Reform Act, which specifies that custody of the Attorney General shall mean confinement in a correctional facility. Defendant interprets the difference between the Bail Reform Act and § 4241, which states "the court shall commit the defendant to the custody of the Attorney General" as inherently resting authority within the Court to make an individualized determination as to what that custody will be. This argument hinges on the implication that the current reading, which requires automatic inpatient hospitalization,

conflicts with due process, equal protection, the Eighth Amendment, and the Rehabilitation Act and that there is another plausible reading of the statute that would not conflict. *See Clark v. Martinez*, 543 U.S. 371, 380–81 (2005) (explaining that "when deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail—whether or not those constitutional problems pertain to the particular litigant before the Court."). Accordingly, the best place to start is to determine if there is another plausible reading of the statute.

The question before the Court is not if the Attorney General can send Defendant to an outpatient program, rather the issue is if the statute can be read as allowing the Court to require the Attorney General to send Defendant to an outpatient program. The statute does not provide authority for the Court to order out-of-custody restoration.

Courts have clearly understood and interpreted the statute as requiring Courts to order custody in the matter of confinement. *United States v. Strong*, 489 F.3d 1055, 1057 (9th Cir. 2007) (Strong argued that the statute "require[d] mandatory *confinement* without giving the district court an opportunity to assess a defendant's *individualized* circumstances.") (emphasis added); *see United States v. Magassouba*, 544 F.3d 387, 393 (2d Cir. 2008) ("If the district court makes a preliminary finding of incompetence, the second step of the statutory scheme—at issue in this case—mandates the defendant's *custodial* hospitalization for evaluation and possible treatment.") (emphasis added); *United States v. Ferro*, 321 F.3d 756, 751 (8th Cir. 2003) (finding that "a district court is *required* to *commit* the defendant to the custody of the Attorney General for a reasonable period of time . . . ." when medical experts have determined that "there is no current medical procedure capable of improving [defendant's] higher cognitive functioning.") (emphasis added); *United States v. Donofrio*, 896 F.2d 1301, 1302 (11th Cir. 1990) (finding that the "the statute is mandatory and that the district court did not have the authority to circumvent the hospitalization."); *United States v. Shawar*, 865 F.2d 856, 860–61 (7th Cir. 1989) (comparing the discretion provided by 18 U.S.C. § 4247(b) when finding a defendant

incompetent with the lack of discretion after a defendant has been found incompetent in 18 U.S.C. § 4241(d)).

The discretion of what hospital or facility will be utilized for restoration determination does not rest with the Court. Congress left this discretion to the Attorney General. This is particularly clear when examining 18 U.S.C. § 4247(b), which allows courts to designate the examiner or examiners, if it finds multiple examiners would be appropriate, and allows courts to "commit the person to be examined." There is no such discretion once competency has been determined in 18 U.S.C. § 4241(d). This difference in the two subsections indicates that if Congress desired to designate the discretion of type of facility and choice of facility with the courts that Congress would have. Instead, Congress gave that discretion to the Attorney General. Section 4241(d) gives the Attorney General the responsibility to place a defendant in a "suitable facility." Further, 18 U.S.C. § 4247(i) states that "[t]he Attorney General *may* contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter." This subsection clearly does not require the Attorney General to contract with private agencies; it merely affords the Attorney General the option. This subsection precludes the Court to act as Defendant wishes, as the discretion rests with the Attorney General. Congress made their intentions clear.

Based on the information before the Court, the statute is not ambiguous. The Court does not have authority to order the Attorney General to hospitalize Defendant in an outpatient restoration program. Accordingly, Defendant's argument that the Court should interpret the statute to avoid the constitutional issues fails.

B. *Rehabilitation Act*

Defendant argues that mandatory custodial restoration violates the Rehabilitation Act, 29 U.S.C. § 794,[4] and the implementing regulations from the Department of Justice. The Government argues that Defendant has not been designated as disabled within the Rehabilitation Act and that this proceeding is not appropriate for such a determination.

Defendant makes a facial challenge to § 4241(d) and an as-applied challenge. The Court does not find that the facial challenge has merit. Section 4247(a)(2) dictates that the "suitable facility" designation considers the "characteristics of the defendant." Combined with the discretion of the Attorney General to "contract with a state, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody" provided it § 4247(i), it is clear that the Insanity Defense Reform Act and the Rehabilitation Act are able to apply together, if they must. Remaining is the as-applied challenge.

The as-applied challenge is not appropriate in this proceeding. A criminal case is not usually the proper setting to exercise civil statutory rights, unless a particular remedy is available. The Rehabilitation Act provides for a private right of action. 29 U.S.C. § 794a(a)(2); *Barnes v. Gorman*, 536 U.S. 181, 184–85 (2002). During the oral arguments for *United States v. Nino* amicus counsel for the Arizona Center for Disability Law and Judge Danny J. Boggs[5] had a telling exchange regarding the proper procedure for the claim that Defendant is currently attempting to bring.[6] Judge Boggs suggests that in a situation where a defendant believes that the Attorney General has violated the Rehabilitation Act with their choice of facility that the defendant would bring a civil habeas corpus action. Counsel notes that he would bring a civil action under the Rehabilitation Act or "the

---

[4] There is a significant amount of briefing related to the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA"). This is because the Rehabilitation Act incorporates the standards applied under the ADA. 29 U.S.C. § 791(f); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).
[5] Judge Boggs was sitting by designation from the United States Court of Appeals for the Sixth Circuit.
[6] United States Court of Appeals for the Ninth Circuit, *17-10546 USA v. Martin Nino*, YouTube (Dec. 20, 2018) https://www.youtube.com/watch?v=C4U37kxsGVU. This exchange begins at 15:45 and ends at 16:57.

*Olmstead* decision."[7] Neither suggested that the proper procedure was to litigate this issue in the criminal case. While the Court is sympathetic to Defendant's position and reasoning as out-of-custody restoration is more economically efficient and appears to have proven effective at the state level, the remedy for this argument rests with the Attorney General, Congress, or in a different proceeding

C. *Policies of AG and BOP*

Defendant argues that the language of § 4241 allows for outpatient restoration and that the policies of the Attorney General and BOP requires incarceration. Defendant asserts that statute requires "a showing of necessity to justify inpatient confinement." Further, Defendant argues that the policies violate anti-discrimination laws.

Section 4241 does not require out-of-custody restoration. As explained above, the courts have interpreted § 4241 as requiring confinement. *Strong*, 489 F.3d at 1057 (Strong argued that the statute "require[d] mandatory *confinement* without giving the district court an opportunity to assess a defendant's *individualized* circumstances.") (emphasis added); *see Magassouba*, 544 F.3d at 393 ("If the district court makes a preliminary finding of incompetence, the second step of the statutory scheme—at issue in this case—mandates the defendant's *custodial* hospitalization for evaluation and possible treatment.") (emphasis added); *Ferro*, 321 F.3d at 751 (finding that "a district court is *required* to *commit* the defendant to the custody of the Attorney General for a reasonable period of time . . . ." when medical experts have determined that "there is no current medical procedure capable of improving [defendant's] higher cognitive functioning.") (emphasis added); *Donofrio*, 896 F.2d at 1302 (finding that the "the statute is mandatory and that the district court did not have the authority to circumvent the hospitalization."); *Shawar*, 865 F.2d at 860–61 (comparing the discretion provided by 18 U.S.C. § 4247(b) when finding a defendant incompetent with the lack of discretion after a defendant has been found incompetent in 18 U.S.C. § 4241(d)).

More to the point, 18 U.S.C. § 4247(i) states that "[t]he Attorney General *may*

---

[7] *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter." Congress does not require the Attorney General to contract with private agencies; it does afford the Attorney General the option. Section 4247(a)(2) dictates that the "suitable facility" designation considers the "characteristics of the defendant." It does not require that a suitable facility is outpatient or the least restrictive. As long as the Attorney General is considering the characteristics of the Defendant then the statute is being followed. The Government has provided individualized reasons why in this case outpatient restoration is not appropriate.

The Rehabilitation Act may place such a requirement. However, as explained above this is not the correct forum for challenging under the Rehabilitation Act.

As for the constitutionality, these arguments coincide with the constitutionality of the statute. As explained in other sections, the statute is constitutional.

D. *Suitability of medical centers*

As explained above, § 4241(d) states that the Attorney General shall place a defendant in a "suitable facility." Section 4247 defines "suitable facility" as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." Defendant argues that the BOP medical centers are not suitable in this particular circumstance, as it will "leave her vulnerable to manipulation and abuse." Doc. 97. The Government asserts that in-custody restoration is required in this case because Defendant has been accused of abusing prohibited substances while on release and has been unable to arrive on time to court appearances and provider appointments. These issues will be prevented or addressed at an inpatient facility. This will provide a more detailed prognosis in a situation where outside factors, i.e. prohibited substances, could be interfering with Defendant's abilities to learn, concentrate, and remember.

The Court finds that the Government has considered the nature of the offense and the characteristics of the defendant to identify a "suitable facility" as required by § 4247(a)(2).

E. *Inadequacy of out of patient program and the burden*

Defendant argues that the Government bears a burden of showing that the outpatient restoration programs are inappropriate. This argument misreads the statute. As explained above, the Attorney General "*may* contract" with outside vendors, but it is not required to do so. § 4247(i). Further, the Government has provided a reasonable argument as to why in-custody restoration is appropriate in this situation. The Court finds that Defendant's argument does not have merit.

F. *Procedural Due Process*

Defendant argues that procedural due process requires a hearing before a person released under the Bail Reform Act can be committed to inpatient treatment. Defendant argues that the suitability and necessity requirements of the Insanity Defense Reform Act create a liberty interest requiring an adversarial hearing before a neutral decision-maker. Defendant's position rests mostly on *Vitek v. Jones*, 445 U.S. 480 (1980).

The Court finds that a closer look at *Vitek v. Jones* is warranted. In *Vitek v. Jones*, 445 U.S. 480 (1980) the Supreme Court of the United States examined if a state prisoner had a procedural due process right to a hearing prior to transfer to a "mental hospital." *Vitek*, 445 U.S. at 487. The transfer for the "mental hospital" was until such a time, "prior to the expiration of his sentence, treatment in such facility is no longer necessary." *Id*. at 484 n.1 (quoting Neb. Rev. Stat. Ann. § 83-180(1)). The Supreme Court answered in the affirmative for two reasons. *Id*. at 487–88. First, the state had created a liberty interest in a determination that prisoners would not be transferred absent that they "suffer[ed] from a mental disease or defect" that could not be treated properly in the prison. *Id*. at 489–90. Second, the Supreme Court found that "the stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment, coupled with the subjection of the prisoner to mandatory behavior modification as treatment for mental illness, constitute a kind of deprivations of liberty that requires procedural protections." *Id*. at 494. The Supreme Court found that there should be an adversarial hearing to determine if the

prisoner was "mentally ill and [could] not be treated in prison." *Id*. at 495.[8]

Procedural due process requires two questions. First, is process due because there is a deprivation of a liberty or property interest? If yes, then what process is required? "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he [or she] may be 'condemned to suffer grievous loss,' and depends upon whether the recipient's interest . . . outweighs the governmental interest." *Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970).

Defendant argues that the suitability and necessity language created a liberty interest that necessitates an adversarial hearing. The suitability comes from § 4241(d) "[t]he Attorney General shall hospitalize the defendant for treatment in a suitable facility" and § 4247(a)(2) defining "suitable facility" as "a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant" and § 4247(i)(C)[9] stating that the Attorney General "shall, before placing a person in a facility pursuant to the provisions of section 4241 . . . consider the suitability of the facility's rehabilitation programs in meeting the needs of the person." Defendant points to the necessity language in § 4241(d), which states that the defendant will only be hospitalized "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he [or she] will attain the capacity to permit the proceedings to go forward." Defendant argues that this discretion should constitutionally be placed with the Court.

Statutes can create an interest that must be protected through the proper procedures. *Hayward v. Procunier*, 629 F.2d 599, 601 (9th Cir. 1980). Statutes can create justifiable expectation that a particular benefit will not be rescinded or disregarded. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Section 4241, in conjunction with § 4247, creates,

---

[8] There was disagreement among the Justices regarding if the state should be required to furnish an attorney in the hearing. *Id*. at 496–97.
[9] Defendant also cited to § 4247(i)(A), which gives the Attorney General to "contract with a state, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody." The Court does not find that this creates a liberty interest in Defendant or relates to suitability of the facility. These are potential avenues for the Attorney General to designate a suitable facility. However, they are not required.

if one did not already exist, an interest in any defendant found to be incompetent that they would be sent to a suitable facility considering their individual characteristics. Before this happens, a court holds a hearing and finds that they are incompetent. § 4241(d).

Due process can be satisfied through a variety of different methods. *Wolff*, 418 U.S. at 560–61. The United States Court of Appeals for the Fifth Circuit recently examined if § 4241(d) comports with procedural due process. *United States v. McKown*, 930 F.3d 721, 731–32 (5th Cir. 2019). The Fifth Circuit found that the "hearings to assess competency, 18 U.S.C. § 4241(a); to administer forced medication, *Sell [v. United States]*, 539 U.S. [166,] 180–81 [(2003)]; and to evaluate a defendant's dangerousness, 18 U.S.C. § 4246(a)[]" provide sufficient process regarding "the nature, duration, and necessity of confinement." *McKown*, 930 F.3d at 731. The Fifth Circuit balanced the interest defendants have in remaining out of confinement with the government's interest in "a correct diagnosis and in prosecuting trials in a fair and timely manner." *Id*. at 732. The court also reasoned that "the risk of an erroneous deprivation of liberty is low," as the temporary confinement permits a more "careful and accurate diagnosis." *Id*. (quoting *United States v. Filippi*, 211 F.3d 649, 651 (1st Cir. 2000)).

The Court finds that the reasoning from the second part of *Vitek v. Jones* is satisfied because there was an adversarial hearing to determine that Defendant is "suffering from a mental disease or defect rendering [her] mentally incompetent to the extent that [she] is unable to understand the nature and consequences of the proceedings against [her] or to assist properly in [her] defense" as required by § 4241(d). (Doc. 75.) There was due process prior to the stigma of "mental illness" was attached to Defendant. To the extent further due process procedures are required, the Court finds that those are protected in the above analysis.

The Court finds that § 4241(d) comports with Defendant's procedural due process rights.

1    G. *Substantive Due Process*

2    Defendant argues that mandatory in-custody restoration violates the substantive due process in several ways. First, Defendant argues that due process requires a case-by-case determination and that the Government must prove that there is no less restrictive alternative. Second, Defendant argues that *Strong* "was based on a faulty premise" and that there have been vast improvements in restoration procedures. Defendant rests heavily on *Carr v. Georgia*, 815 S.E.2d 903 (Ga. 2018), which found that mandatory custody for restoration does not comport with due process.

The Court finds that *Strong* is still binding law within the Ninth Circuit. *United States v. Nino*, 750 Fed. Appx. 589, 589–90 (9th Cir.) (mem.), *petition for cert. filed*, 19-5487 (Aug. 7, 2019). Additionally, the Fifth Circuit just examined this question. *McKown*, 930 F.3d at 728–30. The Fifth Circuit distinguished the state statute in *Carr* from § 4241(d). *Id.* at 730. The statute in question in *Carr* required mandatory custodial restoration for only violent offenders. *Carr*, 815 S.E.2d at 905–06, 913. It also pointed out that *Carr* is an outlier. *McKown*, 930 F.3d at 730.

The Court finds that § 4241(d) does not violate due process.

H. *Equal Protection*

Defendant argues that the Court should apply strict scrutiny to § 4241(d) and find that it violates equal protection as defendants under § 4241(d) are subject to a less stringent confinement standard than defendants under the Bail Reform Act, § 4246 (providing for hospitalization for convicted persons set for release, persons committed to custody of Attorney General under § 4241(d), and persons who's criminal charges were dismissed solely due to their mental condition), and defendants in the Arizona state criminal system. Additionally, Defendant argues that the differing treatment does not withstand either intermediate or rational basis scrutiny.

The Government contends that rational basis review should be applied. Then the Government asserts that persons subjected to § 4241(d) are not similarly situated to person subjected to § 4246 or the Bail Reform Act and that there is a reasonable basis for the

difference of treatment. Finally, the Government points out that different treatment from the federal government and state government does not result in an equal protection violation.

The Court finds *United States v. Sahhar*, 917 F.2d 1197 (9th Cir. 1990) helpful in determining the correct standard of review.[10] In *Sahhar*, the defendant was found incompetent and unlikely to regain competency in a reasonable time. *Id*. at 1199. The director of the facility where the defendant was hospitalized requested that a hearing pursuant to § 4246(a). *Id*. The defendant was not convicted and remained innocent until proven guilty. *See id*. The district court ordered defendant to the custody of the Attorney General for hospitalization pursuant to § 4246(d). *Id*. at 1200. The defendant challenged the statute, alleging that it violated his equal protection rights. *Id*. The Ninth Circuit specifically avoided resolving what the exact standard of review should be. *Id*. at 1201. Instead, the Ninth Circuit said, "Modern equal protection analysis involves at least three possible standards of review: strict scrutiny, heightened scrutiny and rational basis. We are concerned here with only the latter two, as it is clear that strict scrutiny does not apply to involuntary commitment classifications." *Id*. at 1201 n.4 (internal citations omitted). There are many similarities between the defendant in *Sahhar* and Defendant in this case. Both are innocent until proven guilty, as they have not been convicted, and they both face involuntary confinement for mental health treatment, which they may believe is punitive in nature. Accordingly, the Court will apply heightened scrutiny, which requires that "a classification must be substantially related to the achievement of an important governmental interest." *Id*. at 1201 (internal citations omitted).

Confinement pursuant to § 4246 differs from confinement pursuant to § 4641 in the following ways: (1) it is not limited to the reasonable period, not to exceed four months, without additional finds by the court and (2) the purpose is to protect others and property instead of assisting in restoration of competency for trial. Confinement pursuant to the Bail Reform Act differs from confinement pursuant to § 4641 in the following ways: (1) the

---

[10] Defendant asserts that *Sahhar* is inapposite. The Court disagrees.

- 13 -

time limits are pursuant to the Speedy Trial Act instead of the reasonable period set out in § 4241(d) and (2) the purpose of the Bail Reform Act is to protect the community and ensure that the defendant does not flee, while § 4241 is to restore or ensure an accurate diagnosis. Furthermore, the government's interest in accurately determining if the defendant can be restored to competency in a reasonable time is important. *See Strong*, 489 F.3d at 1062. "Such a determination requires a more 'careful and accurate diagnosis' than the 'brief interviews' and 'review of medical records' that tend to characterize the initial competency proceeding." *Id.* (internal citation omitted). Mandating custodial restoration is substantially related to the government's interest in an accurate determination. The custody allows for a more careful determination as to restoration and verification of the competency evaluation. Courts have ordered custodial restoration when there is no expectation that the defendant could be restored. *See Ferro*, 321 F.3d at 758 (considering custodial restoration evaluation in defendant with "a moderate degree of dementia, secondary to [a] stroke"); *Filippi*, 211 F.3d at 650 (ordering custodial restoration for a defendant suffering from vascular dementia that was irreversible); *Donofrio*, 896 F.2d at 1302 (defendant argued that evidence showed he was incompetent due to a permanent condition).

As to the argument that Arizona utilizes out-of-custody restoration, "it is of no consequence that the federal scheme differs from a state criminal code otherwise applicable within the boundaries of the [s]tate[.]" *United States v. Antelope*, 430 U.S. 641, 648 (1977). This difference in treatment does not present an equal protection violation.

The Court finds that § 4241(d) comports with the right to equal protection.

I. *Hybrid of Due Process and Equal Protection*

Defendant's argument that *Bearden v. Georgia*, 461 U.S. 660 (1983) created a new set of rights or guarantees separate from equal protection or due process analyses is unpersuasive. The Supreme Court of the United States recognized the underlying issue could sometimes be analyzed under an equal protection framework and sometimes under a due process framework, *Bearden v. Georgia*, 461 U.S. 660, 665–66 (1983), depending on which framework captures the essence of the right in a more accurate and

comprehensive way, or even as the two frameworks may converge in such a way that one analysis may provide insight into the other. *Obergefell v. Hodges*, 135 S. Ct. 2584, 2603 (2015). The Supreme Court did not create a hybrid claim.

  J.  *Eighth Amendment Prohibition Against Excessive Bail*

Defendant also argues that automatic confinement for competency restoration violates the Eighth Amendment's ban on excessive bail because detention without bail requires overcoming a constitutional presumption in favor of release. However, the right to bail "is not absolute." *Nino*, 750 Fed. Appx at 590. The Excessive Bail Clause does not prohibit Congress from "mandating detention on the basis of a compelling interest other than prevention of flight." *United States v. Salerno*, 481 U.S. 739, 753-55 (1987). "Congress may limit pre-trial release in light of the government's interest in restoring a defendant to competency so the prosecution may move forward." *Nino*, 750 Fed. Appx. at 590. Here after a hearing, the Court found Defendant not competent to stand trial. The government has a compelling interest in restoring the defendant to proceed with prosecution since it carries the burden of proving a defendant's mental competency to stand trial. *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991). Therefore, the Eighth Amendment does not prohibit detention for a limited period of time to accomplish treatment and restoration of defendant's capacity to stand trial.

IV. **CONCLUSION**

Defendant's objection is denied. Magistrate Judge Bowman's Order stands.

Dated this 21st day of August, 2019.

Honorable James A. Soto
United States District Judge